IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JEREMY BUTCHER,<br>JEREMY BUTCHER, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>TEAMSTERS LOCAL 955 and<br>JOHN DOES 1-5,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18-2424-JAR-KGG |

## MEMORANDUM & ORDER DENYING
## MOTION TO STAY PENDING ARBITRATION

Currently pending before the Court is Defendant's "Motion to Stay Pending Arbitration, or in the Alternative, to Consolidate Pre-Trial Discovery." (Doc. 15.) After review of Defendant's motion and relevant filings, the Court **DENIES** the Motion to Stay (Doc. 15).

### FACTUAL BACKGROUND

Plaintiffs purchased, from Bimbo Bakeries ("Bimbo"), the right to sell and distribute bakery products of Bimbo Bakeries and its affiliates through a particular "Sales Area." This resulted in Plaintiffs entering into a Distribution Agreement with Bimbo and becoming an Independent Operator ("IO"). Plaintiffs allege that

1

at some point Bimbo Bakeries undertook efforts to purchase back Distribution Routes from IOs, including Plaintiffs. (*See* Doc. 1, at 7.) Plaintiffs describe this effort by Bimbo as "improper." (*Id.*) According to Plaintiffs' Complaint, Plaintiffs were unwilling to sell their distribution rights. (*Id.*)

Plaintiffs allege that in 2017, "Bimbo undertook negotiations with [Defendant] to establish a new pay schedule for its drivers to take over the Routes owned by the Plaintiffs and other independent Route owners in the Kansas City metropolitan area." (*Id.*, at 5.) Plaintiffs allege that by doing so, Defendant has "undertaken to service Plaintiffs' route and appropriate for themselves the customer contacts that Plaintiffs have developed." (*Id.*, at 7-8.)

Plaintiffs allege that Defendant and its drivers who have taken over Plaintiffs' Route "have conspired and agreed with each other and with Bimbo to commit the foregoing torts and have each taken affirmative steps to implement such agreement and conspiracy." (*Id.*, at 8.) Defendant contends, however, that "the real dispute at issue is a breach of contract action between Plaintiffs and Bimbo Bakeries." (Doc. 15, at 6.) Referring to Plaintiffs' Complaint, Defendant notes that Plaintiffs allege that Bimbo "breached the Distribution Agreement" with Plaintiffs and Bimbo "wrongfully assigned [Defendant's] employees and/or other personnel to service Plaintiffs' Route and furnished said employees and personnel with the tools, marks, and other trade necessities to take over the Plaintiffs'

Route." (Doc. 1, at 28-29.) The Court notes that Bimbo is not a party to this action. (*See generally, id*.)

Defendant moves to stay the present case pending the outcome of arbitration in another matter involving Plaintiffs, *Jeremy Butcher and Jeremy Butcher, Inc. v. Bimbo Foods Bakery Distribution and Bimbo Bakeries USA* (JAMS No. 1340016191), filed on August 9, 2018 (hereinafter "Bimbo litigation"). (Doc. 15, at 4.) As stated above, the present lawsuit was filed a week later, on August 16, 2018. (Doc. 1.) Defendant argues that the arbitration complaint and pleadings in the present case "are illustrative of the fact that there are overwhelming common issues of law and fact in the case being arbitrated and the case being litigated." (Doc. 15, at 7.) According to Defendant, "[u]nder these circumstances, it is appropriate for the Court to stay this case pending the outcome of arbitration" in the Bimbo litigation "to promote judicial efficiency and avoid problems related to issue preclusion and damages." (*Id*., at 7-8.)

## ANALYSIS

I. **Federal Arbitration Act.**

Defendant initially argues that "[t]he Federal Arbitration Act (FAA), 9 U.S.C. § 3, requires a district court to stay judicial proceedings where a written agreement provides for arbitration of a dispute that is the subject of the litigation."

(Doc. 15, at 8 (citing *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995)). Section 3 states:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Defendant argues that a stay is "justified" under the FAA in cases

> where the arbitration may partially determine issues or facts common to the claim against a non-arbitrating party. Staying proceedings for nonarbitrable claims when an arbitration is ongoing is appropriate if the 'arbitrable claims will have a preclusive effect on the nonarbitrable claims ... [and] predominate over the nonarbitrable claims.'

(*Id.*, at 8 (quoting *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (l0th Cir. 1998).) Defendant continues that a "strong possibility of duplication also weighs in favor of granting a stay of all issues pending the resolution of arbitration." (*Id.*, at 8-9.) Defendant also cites two cases where courts have stayed non-arbitration claims "where the arbitration will only narrow the issues for the

4

non-arbitrating parties rather than determine them …" (*Id*., at 9 (citations omitted).) Defendant argues that "all of the aforementioned justifications for a stay" exist in the present litigation. (*Id*.)

Defendant contends that "[f]ailure to stay litigation in this matter risks inconsistent determinations of fact and law that would confuse the issues involved in this case even more, and failure to stay would unduly prejudice the Union in this case considering Plaintiffs' claims are entirely dependent on linking the Union to alleged torts committed by Bimbo Bakeries." (*Id*., at 14.) The claims in the present case "center on the respective rights and obligations pursuant to the Distribution Agreement" between Plaintiffs and Bimbo which, according to Defendant, "will be sorted out by the arbitrator" in the Bimbo arbitration. (*Id*.) Defendant continues that

> while a finding against Bimbo Bakeries in arbitration will not impute any guilt or liability to the Union, findings in the arbitration related to key elements in the torts alleged against the Union are relevant in determining whether or not the Union could have committed any of the torts alleged, especially since Plaintiffs' allegations rely almost entirely on the Union acting in concert with Bimbo Bakeries and allege that Bimbo Bakeries' wrongdoing, if any, should be imputed to the Union.

(*Id*., at 15.) Further, Defendant contends that Plaintiffs seek "the *exact same* damages in this case" as they do in the Bimbo arbitration, which "could risk inconsistent" damage determinations. (*Id*.)

5

Plaintiffs argue that a recent U.S. Supreme Court decision "precludes an order under § 3 staying this proceeding." (Doc. 17, at 8 (citing *New Prime Inc. v. Oliveira*, 586 U.S. ___, No. 17-340, 2019 WL 189342, at *10 (U.S. Jan. 15, 2019).) Plaintiffs state that as a result of the holding in *New Prime*, 9 U.S.C. § 1 "excludes from the Act's compass 'contracts of employment of ... workers engaged in ... interstate commerce.'" (Doc. 17, at 7 (citing *New Prime*, *supra*).) Plaintiffs note that before *New Prime*, "the exception in § 1 did not apply in 10th Circuit to workers engaged in interstate commerce who operated, as Mr. Butcher, as an independent contractor." (*Id*.) In *New Prime*, however, the Supreme Court held that the term "contracts of employment" in § 1 of the FAA applies to both employees and to independent contractors. 2019 WL 189342, at *10 ("[T]he term 'contracts of employment' refer[s] to agreements to perform work."). Thus, according to Plaintiffs, "the request for stay must be denied as the Court lacks the authority under the Act to issue a stay." (*Id*., at 8.)[1]

The Court finds the arguments of Defendant and Plaintiffs to be misplaced because it is uncontroverted there is no arbitration agreement between the parties in the present case. The cases cited by the parties, unlike the matter before the Court, involve claims that are arbitrable. As such, the FAA does not provide authority for a stay in this instance and the cases cited by both parties are

---

[1] Defendant chose not to file a reply brief to address this issue.

inapplicable to the Court's analysis. Additionally, even in the absence of the holding in *New Prime*, the FAA does not <u>compel</u> the staying of nonarbitrable cases that are related to a case in arbitration. Analysis thus turns to the Court's inherent power to issue a stay.

II.     **The Court's Inherent Power to Issue a Stay.**

The power to stay proceedings is part of the Court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." ***Pipeline Prod., Inc. v. Horsepower Entrmt.***, No. 15-4890-KHV-KGS, 2016 WL 1448483, at *1 (D. Kan. April 13, 2016) (quoting ***Landis v. N. Am. Co***., 299 U.S. 248, 254 (1936)). Whether to grant a stay is left to the discretion of the Court. *See* ***Clinton v. Jones***, 520 U.S. 681, 706-06 (1997) (district court has broad discretion to stay proceedings as incident to power to control docket); ***Pet Milk Co. v. Ritter***, 323 F.2d 586, 588 (10th Cir. 1963). In exercising judgment on this issue, the Court "must weigh competing interests and maintain an even balance." ***Landis***, 299 U.S. at 255. The party requesting a stay "must make out a **clear case of hardship or inequity**, in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id*. (emphasis added); *see also* ***Pipeline Prod., Inc.***, 2016 WL 1448483, at *1; ***Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.***, 713 F.2d 1477, 1484 (10th Cir. 1983) (the right to

7

proceed in court should not be denied except under the "most extreme

circumstances").

As discussed above, Defendant contends that "[f]ailure to stay litigation in this matter risks inconsistent determinations of fact and law that would confuse the issues involved in this case even more, and failure to stay would unduly prejudice the Union in this case considering Plaintiffs' claims are entirely dependent on linking the Union to alleged torts committed by Bimbo Bakeries." (Doc. 15, at 14.) Plaintiffs respond the prejudice to them that would be caused by a stay would be "severe and immediate." (Doc. 17, at 8.) Plaintiff Butcher "complains of the loss and conversion of his livelihood" as they "operated a bread route as his sole source of income." (*Id*.) An indeterminate stay would be "extremely prejudicial and *adds* to the damage already caused," according to Plaintiffs. (*Id*., at 9.)

Plaintiffs continue that Defendant, on the other hand, will suffer no prejudice by continuing this litigation during the pendency of the arbitration because the arbitration result will have no effect on Plaintiffs' claims against Defendant. (*Id*.)

> The doctrine of collateral estoppel, for example, applies only when the issue previously decided is identical with the one presented in the action in question. **Moss v. Kopp**, 559 F.3d 1155, 1161 (10th Cir. 2009).
> Here, the issues presented in the arbitration against Bimbo clearly differ from those presented here against a separate entity altogether. Both Bimbo and the Union are accused of wrongful conduct that, as a product of their distinctly different relations to the Plaintiffs, are completely unique. … The relationship between Bimbo

> and the Plaintiffs was governed, in part, by the Distribution Agreement. The same is not true of the Union. Thus, the 'issues decided by the arbitrator' will have no effect whatsoever on the issues involved in this case.

(Doc. 17, at 9.) According to Plaintiffs, "the issues raised by the Union – that of the respective rights and obligations pursuant to the Distribution Agreement and whether Bimbo 'breached its agreement with Plaintiff Butcher' – are irrelevant here" because "[t]he claims against the Union have nothing to do with the Distribution Agreement." (*Id*., at 10.) As such, Plaintiffs contend they "will not have had a full and fair opportunity to litigate the issues relevant here" in the arbitration. (*Id*., at 10.) The Court agrees.

The Tenth Circuit has held that the determination of whether to stay the claims of a non-arbitrating party "is based upon considerations of judicial efficiency." ***Coors Brewing Co. v. Molson Breweries***, 51 F.3d 1511, 1518 (10th Cir. 1995) (citing ***Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Inc.***, 760 F.Supp. 1036, 1045 (E.D.N.Y.1991)). That stated, the ***Coors*** decision also acknowledged that "courts have held that arbitration should proceed in tandem with non-arbitrable litigation." (*Id*. (citing ***Armco Steel Co. v. CSX Corp.***, 790 F.Supp. 311, 316 (D.D.C.1991); ***Pensacola Constr. Co. v. St. Paul Fire & Marine Ins. Co.***, 705 F.Supp. 306, 308 (W.D.La.1989) (holding that the party seeking the

stay must rebut the "'heavy presumption'" that "'the arbitration and the lawsuit will each proceed in its normal course'" (citation omitted)).)

As Plaintiffs state, Defendant "is not a party to any arbitration agreement," thus ""none of the claims against [Defendant] are arbitrable." (Doc. 17, at 11.) Plaintiffs argue that this litigation "having to proceed in tandem with the arbitration accords with both Federal law and the 10th Circuit's guidance." (*Id.*) The Court agrees.[2] The "judicial and party resources would not be preserved because the claims against the Union are not so intertwined with the claims against Bimbo that the Union would be saved any significant expenditure of resources." (*Id.*, at 12.) Further, a stay would not "avoid confusion and inconsistent results" because the "roles played by Bimbo and [Defendant] are separate and distinguishable." (*Id.*) As such, the factors weigh against the issuance of a stay in this case.

"Only in rare circumstance will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will settle the rights of

---

[2] The Court notes that there are four separate, yet similar, cases currently pending in Missouri courts and the Kansas District Court, including ***Andrewjeski v. Bimbo Foods Bakeries Distribution, LLC***, *et al.*, Case No. 2:18-cv-02425-KHV-GEB (continuing multiple, identical causes of action and similar facts). *See* Doc. 17, at 11-12. Defendant concedes that "[t]here is an overwhelming amount of issues of law and fact in common between the two cases, as demonstrated by a comparison of the Complaints." (Doc. 15, at 22.) The Court also notes that a "motion to compel arbitration and dismiss or stay proceedings pending arbitration" was filed in that case (Doc. 15) and subsequently withdrawn (Doc. 23).

both." *Landis*, 299 U.S. at 255. In the Court's opinion, this is not one of those rare circumstances. The Court **DENIES** Defendant's request for a stay (Doc. 15).

III. **Consolidation of Pre-Trial Discovery.**

In the alternative, Defendant asks the Court to consolidate pre-trial discovery with the case of *Andrewjeski v. Bimbo Bakeries USA*, *et al.*, No. 18-2425), mentioned in note 2. (*See* Doc. 15, at 21.) Consolidation of discovery in civil actions, which is governed by Fed.R.Civ.P. 42, is left to the sound discretion of the trial court. *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir.1978). The rule states that

> [i]f actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
>
> (2) consolidate the actions; or
>
> (3) issue any other orders to avoid unnecessary cost or delay.

Fed.R.Civ.P. 42. In exercising this discretion, the court should consider whether consolidation best serves the concept of judicial efficiency. *Johnson v. Unified Gov't of Wyandotte Co.*, Case No. 99-2407-JWL, 1999 WL 1096038, at *1 (D. Kan. Nov. 16, 1999). "The court generally weighs the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense

that consolidation would cause." *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1346 (D. Kan. 2008) (citation omitted).

Defendant argues that "[c]onsolidation of these cases for pretrial discovery would be beneficial in terms of cost and efficiency to the parties and the Court." (Doc. 15, at 22.) Defendant continues that "[i]f the cases are not consolidated, the same fact witnesses and evidence on issues of liability will need to be summoned and produced on two different occasions," causing "the parties to incur duplicative and otherwise unnecessary costs and expenses." (*Id*.)

Plaintiffs respond that consolidation would be inappropriate because the two cases have separate defendants – "[i]n [the present case], only the Union is a defendant, whereas in *Andrewjeski*, Bimbo is also a defendant." (Doc. 17, at 13.) As such, Plaintiffs argue that "[d]iscovery will obviously be much more streamlined in this case than in the other." (*Id*.) Plaintiffs further contend that "the facts are likely to be highly individualized by virtue of there being two different plaintiffs, each uniquely affected by the bad acts at issue." (*Id*.) Plaintiffs thus indicate that the is "amenable to streamlined and consolidated discovery where appropriate, but suggest that given the lack of identity of parties, that any such consolidation be by agreement." (*Id*.)

As noted previously, Defendant chose not to file a reply addressing Plaintiffs' arguments. Defendant thus has not objected to Plaintiffs' proposal,

which the Court deems appropriate. The Court thus **DENIES** Defendant's request to consolidate discovery between the present case and the *Andrewjeski* case, but acknowledges the appropriateness of the parties reaching an agreement regarding consolidation of certain aspects of discovery.

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 15) is **DENIED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 11th day of March, 2019.

                                        S/ KENNETH G. GALE
                                        KENNETH G. GALE
                                        United States Magistrate Judge