IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JEREMY BUTCHER,<br>JEREMY BUTCHER, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>TEAMSTERS LOCAL 955 and<br>JOHN DOES 1-5,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18-2424-JAR-KGG |

**MEMORANDUM & ORDER GRANTING
<u>MOTION TO QUASH SUBPOENAS DUCES TECUM</u>**

Currently pending before the Court is Motion to Quash Subpoenas filed by third-parties Distribution Services of America, Inc. and Distribution Consultants, Inc. (Doc. 28). After review of the motion and relevant filings, the Court **GRANTS** the Motion to Quash (Doc. 28).

**<u>FACTUAL BACKGROUND</u>**

Plaintiffs purchased from Bimbo Bakeries ("Bimbo") the right to sell and distribute bakery products of Bimbo Bakeries and its affiliates through a particular "Sales Area." This resulted in Plaintiffs entering into a Distribution Agreement with Bimbo and becoming an Independent Operator ("IO"). Plaintiffs allege that

1

at some point Bimbo Bakeries undertook efforts to purchase back Distribution Routes from IOs, including Plaintiffs. (*See* Doc. 1, at 7.) Plaintiffs describe this effort by Bimbo as "improper." (*Id*.) According to Plaintiffs' Complaint, Plaintiffs were unwilling to sell their distribution rights. (*Id*.)

Plaintiffs allege that in 2017, "Bimbo undertook negotiations with [Defendant] to establish a new pay schedule for its drivers to take over the Routes owned by the Plaintiffs and other independent Route owners in the Kansas City metropolitan area." (*Id*., at 5.) Plaintiffs allege that by doing so, Defendant has "undertaken to service Plaintiffs' route and appropriate for themselves the customer contacts that Plaintiffs have developed." (*Id*., at 7-8.)

Plaintiffs allege that Defendant and its drivers who have taken over Plaintiffs' Route "have conspired and agreed with each other and with Bimbo to commit the foregoing torts and have each taken affirmative steps to implement such agreement and conspiracy." (*Id*., at 8.) Defendant contends, however, that "the real dispute at issue is a breach of contract action between Plaintiffs and Bimbo Bakeries." (Doc. 15, at 6.) Referring to Plaintiffs' Complaint, Defendant notes that Plaintiffs allege Bimbo "breached the Distribution Agreement" with Plaintiffs and Bimbo "wrongfully assigned [Defendant's] employees and/or other personnel to service Plaintiffs' Route and furnished said employees and personnel with the tools, marks, and other trade necessities to take over the Plaintiffs'

Route." (Doc. 1, at 28-29.) The Court notes that Bimbo is not a party to this action. (*See generally, id.*)

Plaintiffs served subpoenas on the third-parties on May 6, 2019, requesting the production of three categories of documents as well as the deposition of representatives of the third parties relating to then topics. (Docs. 26, 27.) The parties were able to resolve most of their disagreements regarding the subpoenas, but two categories of documents remain at issue. Category 2 of Plaintiffs' subpoena seeks "[a]ll non-privileged documents consisting of and/or relating to any communication between DCI [and DSA] and any Bimbo-affiliated entity relating to any retention by a Bimbo-related person and/or entity of DSA to render advice to and/or provide services for any Bimbo-related person or entity and/or for any IO selling and/or delivering bakery products for any Bimbo-related entity." (Doc. 28, at 2.) Category 3 seeks "[a]ll non-privileged documents consisting of and/or relating to any retention of DSA [and DCI] by any Bimbo-affiliated entity and/or by the Plaintiff herein." (Doc. 28, at 2.)

## ANALYSIS

I. **Legal Standard.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the

> action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.

Fed.R.Civ.P. 45 governs subpoenas, with section (d) of that Rule relating to "protecting a person subject to a subpoena" as well as "enforcement." Subsection (d)(1) of the Rule states that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Subsection (d)(2)(B) relates to objections to subpoenas and states that

> [a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
>
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Thus, the Court must balance Plaintiffs' needs for the information with the potential for undue burden or expense imposed on the third-party respondent.

Subsection (d)(3)(A) requires the District Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (ii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. "Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, 'this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.'" ***Parker v. Delmar Gardens of Lenexa, Inc.***, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) (*citing* ***Martinelli v. Petland, Inc.***, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); ***Martin v. Grp. 1 Realty, Inc.***, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013)). Further, Fed.R.Civ.P. 26(c) allows a court to enter a protective

order regarding a subpoena to protect a party from annoyance, embarrassment or oppression. *Stewart v. Mitchell Transport*, No. 01-2546-JWL, 2002 WL 1558210, at *6 (D. Kan. July 11, 2002).

**II. Third-Parties' Motion to Quash Subpoenas.**

DCI and DSA argue that producing categories 2 and 3 of documents requested in Plaintiffs' subpoena, *supra*, would subject them to undue burden, in violation of Fed.R.Civ.P. 45(d)(3)(A)(iv), as it would require them to "look at files over the past 18 years to determine what Plaintiffs *might* want." (Doc. 28, at 3, ¶ 8; Doc. 28, at 5, ¶ 12.) Further, the third-parties contend that Plaintiffs' demand would require them to produce documentation relating to confidential and protected matters, in violation of Fed.R.Civ.P. 45(d)(3)(A)(iii) and Fed.R.Civ.P. 45(d)(3)(B)(i). (Doc. 28, at 3, ¶ 8; Doc. 28, at 5, ¶ 12.)

Plaintiffs argue that the parties have agreed to and signed a proposed protective order to prevent disclosure of trade secrets and other confidential information and, as such, the only issue for the Court to decide is whether the subpoena subjects the third-parties to an undue burden. (Doc. 31, at 5.) Plaintiffs further contend that the third-parties have failed to show good cause for an order quashing the subpoena, as "[t]here is no indication that the search of DSA/DCI's Exchange server imposes *any* burden whatsoever." (Doc. 31, at 5.) To support its position, Plaintiffs rely on an admission by Mr. David Rosenbaum that "to the

6

extent emails have not been deleted, they 'may be searched and located.'" (Doc. 31, at 5; *see also* Doc. 28-2, at 1, ¶ 7.)

"Whether a subpoena imposes an undue burden upon a witness is a case-specific inquiry that 'turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" ***Speed Trac Techs., Inc. v. Estes Express Lines, Inc.***, Case No. 08-212-KHV, 2008 WL 2309011, at *2, (D. Kan. June 3, 2008) (quoting ***Heartland Surg. Specialty Hosp., LLC v. Midwest Div., Inc.***, Case No. 05-2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007) ). The Court fails to see how nearly all communications between DCI/DSA and "any Bimbo-affiliated entity" **over the past 18 years** are proportional to the needs of this case. Further, the information encompassed by these categories of the subpoenas would include information that is clearly irrelevant to the claims and defenses in this case. Simply stated, these categories of Plaintiffs' subpoena are facially overbroad and Plaintiffs have failed to meet their burden in establishing the relevance of the requested information. Because these categories of the subpoena are facially overbroad, the burden does not shift to the party seeking to quash the subpoena, despite Plaintiffs' arguments to the contrary.

Further, Plaintiffs' reliance on the Rosenbaum affidavit in support of its position is misplaced. In the affidavit, Mr. Rosenbaum states that emails are routinely deleted after being read and any emails deleted more than 14 days prior must be restored from backup tapes. (Doc. 28-2, at 1, ¶ 7). He then goes on to estimate the cost of establishing a "sandbox" environment to be between $10,000 and $12,500 in addition to the software costs and that the "restoration of deleted emails will cost between $7,500 - $10,000 for each tape." (Doc. 28-2, at 2, ¶ 9.) Taken in context, this plainly supports the third-parties' claim that requests impose an undue burden on the third-parties. Clearly, the burden or expense of the proposed discovery outweighs its likely benefit in this case, particularly given that the information is requested from a third-party rather than a party to this action. Accordingly, the subpoenaed third-parties' Motion to Quash as to these categories of documents is **GRANTED** on the grounds that it is facially overbroad and imposes an undue burden on the subpoenaed third-parties.

IT IS THEREFORE ORDERED that the subpoenaed third-parties' Motion to Quash (Doc. 28) is **GRANTED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 29th day of July, 2019.

S/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge
